I. INTRODUCTION
This matter comes before the court on cross-motions for summary judgment.
 II. FACTS
The parties stipulated to the following material facts. This appeal concerns the 2004-05 property tax assessment of real property located in Clackamas County (the property) and identified in Intervener's (the county) records as Account Number 01564774.
The property was owned by Plaintiff Living Enrichment Center Properties, LLC, (taxpayer), which is not an exempt entity, from 1998 to 2003 and leased to Living Enrichment Ministry (LEM). In 1998, LEM applied for and received an exemption under ORS 307.140 and ORS 307.112 as a lessee. On May 30, 2003, taxpayer sold the property to LEM under a land sale contract, which was recorded in Clackamas County on June 12, 2003. LEM applied for and obtained an exemption for the property under ORS 307.140 and ORS 307.162 for the 2003-04 tax year as the property's owner. Early in 2004, LEM defaulted on the land sale contract. Taxpayer, through a forfeiture proceeding, regained ownership of the property on May 5, 2004. *Page 327 
When taxpayer regained possession of the property, it did not file an application for exemption as an owner for the 2004-05 tax year, nor did LEM file an application as a lessee for the 2004-05 tax year.
LEM and taxpayer entered into an agreement on May 27, 2004, in which LEM agreed to vacate the property by June 30, 2004. By July 1, 2004, LEM had not finished cleaning the premises or removing playground equipment. In order to complete those tasks, LEM stayed on the premises until July 10, 2004.
The county determined that the property no longer qualified for an exemption and assessed the property for the 2004-05 tax year.
 III. ISSUE
Is taxpayer's property entitled to exemption for the 2004-05 tax year?
 IV. ANALYSIS
Taxpayer asserts that the property was improperly disqualified from exemption, framing the issue as to whether the county could permissibly disqualify property from exemption between January 1 and July 1. To support its assertion, taxpayer relies on provisions of ORS 311.410 and ORS 308.156. In addition, taxpayer argues that exempt use of the property continued until after July 1, and, therefore, the county wrongfully disqualified the property. Defendant (the department) asserts that the change in ownership, which occurred May 5, 2004, required the taxpayer or LEM to file a new application for exemption pursuant to ORS 307.162 or ORS 307.112, if exemption was sought. The department argues that, because neither taxpayer nor LEM did so, the disqualification was proper. The department further asserts that LEM's use of the property until July 10 was not a qualifying use. The county makes substantially the same arguments.
Taxpayer urges the court to begin its analysis with ORS311.410, which addresses, in part, the effect that property transfers can have on the exempt status of property. The department and the county argue that the analysis begins *Page 328 
with the exemption provision itself. Under taxpayer's theory, the property was properly exempt as of January 1, 2004, and ORS311.410(3) prevents the county from removing the exemption until January 1, 2005. Under the theory of the department and the county, the transfer of ownership on May 4, 2004, required a new application for exemption to be filed pursuant to ORS307.140 and ORS 307.162, and, failing that, the property was not exempt as of January 1, 2004, and, accordingly, not exempt for the 2004-05 tax year.
1, 2. Generally, all property located within Oregon is taxable. ORS 307.030.[1] "It has long been the rule in Oregon that property is subject to taxation unless specifically exempted."Christian Life Fellowship, Inc. v. Dept. of Rev.,12 OTR 94, 96 (1991) (citing Methodist Homes, Inc. v. TaxCom., 226 Or 298, 307, 360 P2d 293 (1961)). Taxpayer argues that no statutory provision gives the county authority to disqualify the property at issue; however, the more proper question is whether the requirements for exemption were fulfilled as required by statute because "taxation is the rule and exemption the exception, available only where it is specifically provided and only in accordance with specified conditions." Erickson v. Dept. of Rev., 17 OTR 324,328 (2004). The question is not, as taxpayer asserts, whether the county had authority to disqualify the property from exempt status; rather, the question is whether taxpayer has complied with all statutorily specified conditions that allow an exemption from the general rule of taxation. The county is required to operate within the statutory constraints — both taxing property that is taxable and not taxing property that meets all the requirements for exemption.[2]
3. Exemption provisions "should be strictly construed in favor of the state and against the taxpayer." North Harbour Corp.v. Dept. of Rev., 16 OTR 91, 94 (2002) (citing Mult.School of Bible v. Mult. Co., 218 Or 19, 27, 343 P2d 893
(1959) (quotation marks omitted)). That rule of construction *Page 329 
"is paraphrased in later cases as `strict but reasonable.'"Id. at 95 (citing Eman. Luth. Char. Bd. v. Dept. ofRev., 263 Or 287, 291, 502 P2d 251 (1972)). Strict but reasonable construction "requires an exemption statute be construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent." Id. (citing Mult. School of Bible,218 Or at 27-28).
4. The exemption provision at issue here is ORS 307.140, which states, in pertinent part, that "[u]pon compliance with ORS307.162," certain property "owned or being purchased by religious organizations shall be exempt from taxation." Accordingly, an exemption will not be granted absent compliance with ORS 307.162, which outlines a process for exemption application.
Taxpayer asserts that the requirements of ORS 307.162 were met by LEM's past exemption application, and, therefore, no new application under ORS 307.162(1) is required because the property was already properly exempt on April 1, 2004. ORS307.162 provides, in part:
 "(1) Before any real or personal property may be exempted from taxation under * * * ORS 307.140 * * * for any tax year, the institution or organization claiming the exemption shall file with the county assessor, on or before April 1 of the assessment year, a statement * * * listing all real or personal property claimed to be exempt and showing the purpose for which such property is used. However:
 "(a) If the ownership of all property included in the statement filed with the county assessor for a prior year remains unchanged, a new statement shall not be required.
 "(b) When the property designated in the claim for exemption is acquired after March 1 and before July 1, the claim for that year shall be filed within 30 days from the date of acquisition of the property.
 "(c) As used in this subsection, `ownership' means legal and equitable title."
When "[i]nterpreting a statute, the court's task is to discern the intent of the legislature." PGE v. Bureau of Labor andIndustries, 317 Or 606, 610, 859 P2d 1143 (1993). That *Page 330 
requires examination of "both the text and context of the statute." Id. The "text of the statutory provision itself is the best evidence of the legislature's intent."Id. Words are to "be given their plain, natural, and ordinary meaning." Id. at 611. The context of the statute "includes other provisions of the same statute and other related statutes." Id. As part of the text and context, the court includes consideration of its own prior interpretations of the statute. State v. Sullens,314 Or 436, 443, 839 P2d 708 (1992). "If the legislature's intent is clear" from the text and context, "further inquiry is unnecessary." PGE, 317 Or at 611. In addition, when construing exemption statutes, "it is important to observe that if the intent of the legislature can be determined by the use of the techniques described in PGE, that intent must be followed, regardless of whether someone would or would not describe the construction as `strict.' "North Harbour,16 OTR at 95.
5, 6. It is important to first note that "property tax exemption statutes require both proper use and pre-exemption application." Erickson, 17 OTR at 331. To put it another way, "the claimant of an exemption is required to bring itself within the terms of the statute." NorthHarbour, 16 OTR at 95 (citation omitted). Unless one of the exceptions in subsection (1)(a) or (b) applies, ORS307.162(1) requires the organization seeking exemption to file a statement each year by April 1 that lists the property claimed and the purpose for which it is used. That statement allows "the appropriate tax authority to confirm" use and ownership. Erickson, 17 OTR at 331. The first exception to this general rule, found in subsection (1)(a), lifts the requirement of filing a new statement if the ownership of the property listed in the prior year's statement has not changed.[3] That statute, in effect, allows the prior year's statement to be carried forward to the current year. The end result is that the county has a current statement on file for each year.
7. The statute also contains a second exception in subsection (1)(b), acknowledging that ownership of property may change after March 1. Christian Life Fellowship,12 OTR 94, *Page 331 
95 (1991). Accordingly, ORS 307.162(1)(b) provides a 30-day filing deadline for property designated in the claim for exemption that is acquired after March 1, but before July 1.[4] ORS 307.162(1)(b) segues with ORS 311.410(1), which states that exempt status cannot change between July 1 and January 1, notwithstanding any transfer in ownership or use.
The statutory scheme for property that is transferred from an exempt to taxable status is, therefore, as follows:
 (1) If the change occurs after January 1 and before March 1, then a statement must be filed by April 1. ORS 307.162.
 (2) If the change occurs after March 1 and before July 1, then a statement must be filed within 30 days. Id.
 (3) If the change occurs after July 1, then the taxable status does not change; however, to obtain exemption for the following tax year, a new statement is required to be filed by April 1 of the following year. Id.; ORS 311.410.
Here, legal and equitable title was transferred back to taxpayer at the close of the forfeiture proceeding on May 5, 2004. Ownership under ORS 307.162(1)(c) means "legal and equitable title." Accordingly, a new statement was required to be filed within 30 days of May 4, 2004. Because none was filed, the county properly removed the exemption.
A Taxpayer's ORS 311.410 argument
Taxpayer argues that ORS 311.410(3) prohibits disqualification when the ownership of exempt property changes between January 1 and July 1. That statute states, in pertinent part:
 "[R]eal property * * * is exempt if it is transferred or changed from a taxable to an exempt
ownership or use at any time before July 1 of any year. However, if such property is exempted under any provision of ORS 307.010 to 307.691, which requires the filing of a claim for exemption, the transfer shall not operate to render such property exempt from taxation for the ensuing tax year unless the *Page 332 
required claim for exemption is filed on or before the date specified in the applicable statute or within 30 days after the date of acquisition or, if relevant under the applicable exemption statute, the change of use of the property, which-ever is later. This section is not intended to limit other statutes that prescribe filing dates for claiming an exemption."
(Emphasis added.) Taxpayer argues that, because there is no corresponding provision governing transfers from exempt to taxable, the county has no authority to remove the exemption. The court disagrees.
8, 9. First, the statute on its face does not address the situation at issue here, but rather transfers fromtaxable to exempt use or ownership. The absence of a corresponding provision governing transfers fromexempt to taxable use or ownership does not automatically render the county's action impermissible, as taxpayer asserts. The county's authority to disqualify the property from exempt status is not the issue. Rather, the issue is taxpayer's compliance with all of the statutory requirements that allow for the property to be exempt from taxation. The court must look to the statutory scheme in its entirety to determine whether exemption is appropriate in any given case. As discussed above, the starting point, or default, is taxation. Accordingly, ORS 310.411(3) sets out the circumstances in which a change of use or ownership can render property that is otherwise taxable exempt from taxation. A corresponding provision setting out the circumstances in which a change of use or ownership can render exempt property taxable would be redundant in light of the statutory scheme as a whole, because, as the court discussed above, there is already in place a statutory scheme that corresponds to the situation in which property undergoes a change of ownership that compromises its exempt status.
10. Second, taxpayer ignores the last sentence of ORS 310.411(3), which states that the "section is not intended to limit other statutes that prescribe filing dates for claiming an exemption." Even if this particular statute, which governs a type of transfer that is not at issue in this case, is somehow relevant, by its very terms it does not obviate the application requirement of ORS 307.162. *Page 333 
11. Taxpayer relies on the legislative history of ORS 310.411 to support its position, noting that both subsection (3) and a corresponding provision were removed but only the text of subsection (3) was replaced. Before examining the legislative history of a statute, it must first be susceptible to more than one reasonable interpretation, that is, it must be ambiguous.State v. Cooper, 319 Or 162, 167, 874 P2d 822 (1994). Taxpayer does not point out any ambiguity and the court sees none. Even if the court were permitted to consider the legislative history, the failure of the legislature to rein-state the corresponding provision does not indicate whether its presence is necessary to result in disqualification of property when ownership changes from exempt to taxable. As stated above, that situation is already adequately covered by the statutory scheme as a whole.
B. Taxpayer's ORS 308.156 argument
Taxpayer also asserts that ORS 308.156(4)(a) supports its argument. That statute provides:
 "If property was subject to exemption, partial exemption or special assessment as of the January 1 assessment date of the preceding assessment year and is disqualified from exemption, partial exemption or special assessment as of the January 1 of the current assessment year, the property's maximum assessed value shall be established under this section."
Taxpayer argues that, because the property was properly exempt on January 1, 2004 — the current assessment year here — that the property's maximum assessed value (MAV) cannot be calculated under that statute, and, therefore, the property cannot be taxed until the 2005-06 tax year.[5] Taxpayer focuses on the words "January 1 assessment date of the current assessment year," a date on which it is undisputed *Page 334 
that the property, in the hands of LEM, was exempt from taxation. The department and county argue that any disqualification occurring before July 1 of an assessment year relates back to the January 1 assessment date, thus rendering the property "disqualified as of January 1 of the current assessment year."
PGE requires the court to examine both the text and context of a statute. 317 Or at 611. In addition, when confronted with several statutory provisions, the court must attempt to adopt a construction that will give effect to all, if possible. ORS 174.010.
12-15. As the county pointed out at oral argument, value is a different concept than exemption. Exempt properties still have value indeed, the county continues to calculate the real market value (RMV) and MAV on exempt properties. Exemption merely functions to relieve the property from whatever taxes would normally have to be paid on that value, and, to qualify for exemption, each statutory requirement must be met by the taxpayer, be it application, use, or the characteristics of the taxpayer itself. The statutes contemplate that changes can and will occur after January 1 that will require actions be taken in response to those changes. Those actions allow changes in ownership and use to be taken into account with regard to exempt properties; however, there comes a point when the record must be frozen in time or the whole system becomes unworkable. The statutes draw a line at July 1, a line that gives and takes away equally. If taxpayer jeopardizes its exemption status on the early side of that line, it is lost for the whole tax year, but if the same taxpayer has the good fortune to do that exact thing on the latter side of the line, the exemption will continue for the remainder of the tax year. The legislature has set that date, and, unless taxpayer can point to some offense to the Oregon Constitution in doing so, that date must stand.
16-18. Contrary to offending the constitution, the scheme is completely consistent with Article XI, section 11, of the Oregon Constitution (Measure 50). Under Measure 50, all property is required to have a MAV that was initially 90 percent of its 1995 RMV and that increases each year, unless the property in question is coming out of exempt status.Id. *Page 335 
§ 11(1)(a), (c)(E). In that case MAV is calculated in a different manner,[6] but "only for the first tax year" in which the disqualification from exemption "is taken into account."Id. § 11(1)(d). The procedure for calculating MAV set forth in ORS 308.156(5) is that prescribed by Measure 50.Cf. ORS 308.156(5)(b) with Or Const, Art XI, § 11(1)(c). The legislature used the phrase "as of in ORS 308.156(4)"a phrase that has a different implication than the word "on" would have. It implies the inclusion of a period of time after the relevant date — here the period of time in which changes in exempt status may be taken into account. That corresponds with other uses of the phrase "as of within the statutory scheme. See ORS 307.112(4)(b) ("If the lease * * * agreement expires before July 1 of any year, the exemption shall terminate as of January 1."). The court concludes, therefore, that the language of ORS 308.156(4)(a) contemplates that a property's disqualification, so long as it occurs between January 1 and July 1, relates back to January 1. Accordingly, ORS 308.156 does not support an argument that taxpayer's property has been improperly disqualified from exemption.
C. Taxpayer's use argument
19. Taxpayer argues that LEM's continued use of the property to July 10 for purposes of winding up its activities allows the exemption to continue the entire year, relying onWillamette University v. Tax Commission, 245 Or 342,422 P2d 260 (1966). The court notes that WillametteUniversity, which addresses a situation in which a taxpayer was preparing property to be used for an exempt purpose, was not a lease situation. Id. at 343. ORS 307.112 provides particular requirements for lessees to qualify for exemption when leasing from nonexempt owners. Assuming arguendo
that the agreement between LEM and taxpayer could be considered a lease, and further assuming that the lease satisfied the requirements of ORS 307.112(1) and (2), which are substantially similar to those of ORS 307.162, but also include a requirement that the lease have an express provision that *Page 336 
the rent will reflect the property tax exemption, ORS307.112(4) still requires an application to have been filed within 30 days after the lease was entered into, which was not done. Accordingly, LEM's continued use of the property was insufficient to prevent disqualification from exemption.
 V. CONCLUSION
The disqualification from exemption of the property was proper because the change in ownership that occurred on May 4, 2004, required a new statement to be filed pursuant to ORS 307.162. Now, therefore,
IT IS ORDERED that Plaintiff's Motion for Summary Judgment is denied; and
IT IS FURTHER ORDERED that Defendant and Intervener's Cross-Motions for Summary Judgment are granted.
Costs are awarded to Intervenor.
[1] All references to the Oregon Revised Statutes (ORS) are to 2003.
[2] ORS 308.030 provides that "all real property within the state * * *, except as otherwise provided by law, shall be subject to assessment and taxation * * *." ORS 308.330 provides that it is the duty of the assessor to assess any taxable property. ORS 310.020 provides that the county shall levy a tax on all taxable property within the county.
[3] Even if the ownership has not changed, however, ORS307.162(4) requires the entity claiming exemption to notify the county within 30 days of any change to a use that would not entitle the property to exemption.
[4] In addition, a statement may be filed as late as December 31, so long as it includes a late filing fee. ORS307.162(2).
[5] Specifically, taxpayer states that "no MAV means no tax." Even if taxpayer's reading of ORS 308.156 is correct, it does not follow that the property is thus rendered valueless; exemption operates to remove tax, not value. If the court cannot find statutory direction for determination of MAV, it would be the court's task to make the determination. WaldoBlock Partners v. Dept. of Rev., 16 OTR 33, 42
(2002).
[6] In those cases, MAV is calculated by using the "ratio of average maximum assessed value to average real market value of property located in the area in which the property is located that is within the same property class." Or Const, Art XI, § 11(1)(c). *Page 337